UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WENDY SUE PRITCHARD,

                Plaintiff,

v.                                                  1:18-CV-0282
                                                    (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                       OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC     KENNETH HILLER, ESQ.
  Counsel for Plaintiff                                TIMOTHY HILLER, ESQ.
6000 North Bailey Ave, Ste. 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                FRANCIS TANKARD, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II   NICOL FITZHUGH, ESQ.
  Counsel for Defendant                              VERNON NORWOOD, ESQ.
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 15.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

**I.      RELEVANT BACKGROUND**

### A. Factual Background

Plaintiff was born in 1976. (T. 77.) She completed the 12th grade. (T. 236.) Generally, Plaintiff's alleged disability consists of bipolar disorder, anxiety, depression, back injury, and hip problems. (T. 237.) Her alleged disability onset date is October 22, 2014. (T. 77.) Her date last insured is September 30, 2019. (T. 17.) Her past relevant work consists of small parts assembler, housecleaner, daycare worker, newspaper deliverer, and school bus monitor. (T. 69-70.)

### B. Procedural History

On October 23, 2014, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (T. 77.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On October 9, 2016, Plaintiff applied for a period of disability and disability insurance benefits ("SSD") under Title II of the Social Security Act and the application was escalated to the hearing level. (T. 15.) On June 15, 2017, Plaintiff appeared before the ALJ, Rosanne M. Dummer. (T. 38-76.) On August 14, 2017, ALJ Dummer issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 12-37.) On December 28, 2017, the AC denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 17-31.) First, the ALJ found Plaintiff met the insured status requirements through September 30, 2019 and Plaintiff had not engaged in substantial

gainful activity since October 22, 2014.  (T. 17.)  Second, the ALJ found Plaintiff had the severe impairments of: status-post June 2017 microdiscectomy for degenerative disease of the lumbar spine, with radiculopathy; fibromyalgia; and obesity.  (*Id.*)  Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 19.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a); except Plaintiff:

> could lift/carry ten pounds; sit six of eight hours, two hours at a time; stand two of eight hours, thirty minutes at a time; and walk two of eight hours, thirty minutes at a time.  She could occasionally reach overhead; she could frequently reach in other directions and frequently push/pull.  She could occasionally use her feet for operation of foot controls.  She should never climb ladders or scaffolds, work at unprotected heights, kneel, crouch, or crawl.  She could occasionally climb stairs and ramps, balance and stoop.  She could occasionally work with moving mechanical parts, operate a motor vehicle, tolerate humidity/wetness, dust, odor, fumes and pulmonary irritants, and extremes of heat/cold and vibration.  She could tolerate moderate (office) noise (Ex. 34F).  She should avoid work that is fast pace or that has high production goals.

(T. 20.)[1]  Fifth, the ALJ determined Plaintiff was unable to perform her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 29-31.)

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Arguments

Plaintiff makes one argument in support of her motion for judgment on the pleadings.  Plaintiff argues the ALJ erred in relying on a non-examining State agency

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R.  §§ 404.1567(a), 416.967(a).

opinion rendered prior to the development of a complete medical record in formulating her RFC determination and such opinion cannot amount to substantial evidence. (Dkt. No. 9 at 9-15.) Plaintiff also filed a reply in which she reiterated her original argument. (Dkt. No. 13.)

### B.   Defendant's Arguments

In response, Defendant makes one argument. Defendant argues the ALJ's decision was supported by substantial evidence. (Dkt. No. 12 at 11-25.)

## III.   RELEVANT LEGAL STANDARD

### A.   Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct.

1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  See *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual

functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

### IV.   ANALYSIS

Plaintiff essentially argues the ALJ's conclusion, that Plaintiff had no work related mental functional limitations, was the product of legal error because the ALJ relied on a stale non-examining State agency opinion.  (Dkt. No. 9 at 9-15.)  For the reasons outlined below, the ALJ properly considered the evidence in the record pertaining to Plaintiff's work-related mental limitations at all steps of the sequential process, the opinion of the non-examining State agency medical examiner was not impermissibly stale, and substantial evidence supported the ALJ's determination.

At step two the ALJ determined Plaintiff's medically determinable impairments of anxiety and depression were non-severe because they did not cause more than minimal limitations in her ability to perform basic mental work activities.  (T. 18.)  Basic mental work activities include the ability to: understand, carry out, and remember simple instructions; use judgment; respond appropriately to supervision, co-workers and usual work situations; and deal with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b)(3)-(6), 416.921(b)(3)-(6).

In making her step two finding, the ALJ considered the "paragraph B" criteria in the Listings at 20 C.F.R., part 404, subpart P, App'x 1.  (T. 18-19.)  The ALJ concluded Plaintiff had "mild" limitations in her ability to: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or

manage herself. (*Id*.) The ALJ cited specific evidence in the record to support her conclusion. (*Id*.)

Although the ALJ determined Plaintiff's mental impairments were non-severe, she thoroughly discussed the impairments in her step four analysis. (T. 20-29); *see Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps). The ALJ noted Plaintiff alleged disability due to bipolar disorder, anxiety, depression, back injury, and hip problems. (T. 21.) The ALJ summarized Plaintiff's hearing testimony including limitations alleged due to mental impairments. (*Id*.) The ALJ thoroughly summarized Plaintiff's treatment history, including treatment and medications received for mental impairments. (T. 22.) The ALJ also considered the limited medical opinion evidence concerning Plaintiff's mental impairments.

In her step four analysis, the ALJ considered the medical opinion evidence in the record. (T. 23.) On April 30, 2015, Plaintiff saw consultative examiner Yu-Ying Lin, Ph.D. (T. 361-365.) Based on her examination of Plaintiff, Dr. Lin opined Plaintiff:

> has no limitation following and understanding simple directions and instructions. She has no limitation performing simple tasks independently. She is mildly limited maintaining attention and concentration. She had no limitation maintaining a regular schedule. She has no limitation learning new tasks. She is mildly limited performing complex tasks independently. She is mildly limited making appropriate decisions. She has no limitation relating adequately with others. She is moderately limited appropriately dealing with stress. Her difficulties are caused by stress-related problems.

(T. 364.) Dr. Lin further stated the results of her examination "appear to be consistent with psychiatric problems, but in itself, this does not appear to be significant enough to interfere with [Plaintiff's] ability to function on a daily basis." (*Id*.)

On May 27, 2015, H.Tzetzo, reviewed the record, including Dr. Lin's examination and opinion and records from Spectrum, where Plaintiff received mental health treatment, dated January 19, 2012 through February 3, 2015.  (T. 83.)  Dr. Tzetzo opined Plaintiff "should be able to handle normal work pressures, psychiatrically speaking, in my opinion now.  Impairment not severe, psychiatrically speaking." (*Id*.)

Plaintiff received mental health counseling at Spectrum from 2012 through 2015.  Plaintiff was discharged from Spectrum on August 3, 2015 because she was to have a court ordered chemical dependency evaluation.  (T. 376, 402.)  Plaintiff did not show up for appointments at Spectrum in January 2015 and February of 2015.  (T. 411-412.)  Plaintiff continued to receive mental health medication from her primary care provider.  (T. 442.)

No other acceptable medical sources provided an opinion regarding Plaintiff's work-related mental functional abilities; however, a social worker provided letters concerning Plaintiff's mental impairments in 2017.  There are five categories of "acceptable medical sources."  20 C.F.R. §§ 404.1513(a), 416.913(a).  Social workers are not included within those categories.  Social workers are "other medical sources," whose opinion may be considered as to the severity of a plaintiff's impairment and ability to work, but their conclusions are not entitled to any special weight.  *Id*. §§ 404.1513(d), 416.913(d).

On June 13, 2017, Michelle Marabella, LMHC, stated Plaintiff's symptoms "limit her ability to perform tasks or jobs that require a set schedule and demand on her frontal cortex due to the stress from the trauma."  (T. 548.)  Ms. Marabella indicated

Plaintiff began treatment with her in May 2017. (*Id*.) Ms. Marabella stated on June 26, 2017, Plaintiff continued with treatment. (T. 549.)

The ALJ considered the opinion evidence in the record and afforded Dr. Lin's opinion "some weight." (T. 26.) The ALJ concluded, "the overall record does not corroborate work-limiting mental impairments" and Plaintiff received "conservative counseling therapy." (*Id*.) The ALJ afforded Dr. Tzetzo's opinion "significant weight." (*Id*.) The ALJ concluded the documentation received at the hearing level indicated infrequent counseling and medication management with "some compliance issues." (T. 26-27.) Lastly, the ALJ concluded no providers expressed concern over Plaintiff's mental health requiring "significant" counseling. (T. 27.) The ALJ considered Ms. Marabella's statements and afforded her statements "limited weight." (*Id*.) The ALJ noted no clinical findings were indicated and the assessment appeared to be based on Plaintiff's self-reports. (*Id*.) Overall, the ALJ concluded the record contained conservative cognitive behavioral therapy, no work-limiting findings were shown, and Plaintiff's problems seemed to be treatable with conservative care. (*Id*.)

First, Plaintiff argues, although a non-examining opinion may in some cases amount to substantial evidence, non-examining opinions themselves will rarely amount to substantial evidence in the context of mental health. (Dkt. No. 9 at 11-12.) Second, Plaintiff argues Dr. Tzetzo's opinion was based on an incomplete medical history and subsequent notes indicate Plaintiff suffered an exacerbation of symptoms. (*Id*. at 12-14.) Third, and lastly, Plaintiff argues the ALJ gave "no legitimate explanation" to support her determination to afford Dr.

Tzetzo's opinion significant weight. (*Id*. at 14-15.)  Here, the ALJ's assessment of the opinion evidence in the record was proper and the ALJ's mental RFC determination was supported by substantial evidence in the record.

To be sure, an "unsupported opinion, offered by [a] psychologist[] who never so much as examined [Plaintiff], is little more than *ipse dixit*."  *Stacey v. Comm'r of Soc. Sec. Admin.*, 799 F. App'x 7, 10-11 (2d Cir. 2020).  Further, "ALJs should not rely heavily on the findings of consultative physicians after a single examination," especially "in the context of mental illness" because "a one-time snapshot of a claimant's status may not be indicative of [her] longitudinal mental health."  *See Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019).

However, the regulations "recognize that the Commissioner's consultants are highly trained physicians with expertise in evaluation of medical issues in disability claims whose opinions may constitute substantial evidence in support of residual functional capacity findings."  *Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015) (citing *Delgrosso v. Colvin,* 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015); *see also Heagney-O'Hara v. Comm'r of Soc. Sec.,* 646 F. App'x 123, 126 (2d Cir. 2016); *Monette v. Colvin,* 654 F. App'x 516 (2d Cir. 2016); *Snyder v. Colvin,* 667 F. App'x 319 (2d Cir. 2016).

In addition, "medical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding."  *Camille v. Colvin*, 104 F.Supp.3d 329, 343 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016).  A medical opinion may be stale if it does not account for the plaintiff's deteriorating condition.  *See Carney v. Berryhill*, No. 16-CV-269, 2017 WL 2021529, at

\*6 (W.D.N.Y. May 12, 2017).  "However, a medical opinion is not necessarily stale simply based on its age." *Biro v. Comm'r of Soc. Sec.,* 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018).  Remand is warranted where more recent evidence in the record "directly contradict[s] the older reports of [plaintiff's] functioning on which the ALJ relied" and the ALJ failed to analyze the more recent evidence. *Blash v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 642, 643 (2d Cir. 2020).

The ALJ relied on Dr. Tzetzo's opinion, Dr. Lin's examination and opinion, and treatment notations in the record in making her determination.  Dr. Tzetzo opined, and the ALJ agreed, Plaintiff's mental impairments would not prevent the basic mental demands of work.  (T. 26-27.)  Contrary to Plaintiff's argument, the ALJ provided reasoning to support her determination.  Namely, the ALJ determined Dr. Tzetzo's opinion was consistent with subsequently submitted mental health treatment records. (T. 26-27.)

Indeed, mental health treatment summaries, submitted at the hearing level, indicated Plaintiff appeared to be "managing well," was alert and oriented, her speech was noted to be over productive, her mood was euthymic, and her recent and remote memory were intact.  (T. 401.)  The ALJ observed that while it was reasonable to assume that conservative counseling therapy would likely enhance Plaintiff's functioning, the record did not support the imposition of work-limiting findings.  (T. 25); *see Townsend v. Comm'r of Soc. Sec.,* No. 17-CV-6742, 2018 WL 6697001, at \*7 (W.D.N.Y. Dec. 20, 2018) (ALJ appropriately discounted more restrictive mental limitations suggested by claimant's therapist; among other things, the ALJ observed that claimant's "anxiety was generally situational in nature, and waxed and waned

depending on circumstances in life"); *Jones v. Colvin*, No. 11-CV-445, 2014 WL 1976921, at *11 (W.D.N.Y. May 15, 2014) (ALJ appropriately weighed the evidence in concluding that the record failed to support allegations of disabling impairments: "Indeed, Dr. Gupta's own treatment notes, as well as those provided by [another provider], indicate that Plaintiff's complaints of depression were largely situational and triggered by stressors, such as caring for her elderly mother, and her abusive marital relationship."). Therefore, the ALJ provided more than conclusory reasoning in evaluating Dr. Tzetzo's opinion.

Dr. Lin's opinion further supported the ALJ's determination. Dr. Lin found Plaintiff had, at most, a moderate limitation her ability to appropriately deal with stress. (T. 364.) The Second Circuit has held that moderate limitations in work related functioning does not significantly limit, and thus prevent, a plaintiff from performing unskilled work. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined [plaintiff] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."); *see Whipple v. Astrue*, 479 F. App'x. 367, 370 (2d Cir. 2012) (consultative examiners' findings that plaintiff's depression caused moderate limitations in social functioning ultimately supported the ALJ's determination that plaintiff was capable of performing work that involved simple tasks and allowed for a low-stress environment); *Saxon v. Colvin*, No. 13-CV-165, 2015 WL 3937206, at *6 (W.D.N.Y. June 26, 2015) ("The ALJ considered the functional limitations suggested by the medical evidence, including plaintiff's moderate limitation in the ability to learn new tasks, perform complex tasks, make appropriate decisions, relate adequately with others, and deal with stress. These

limitations are incorporated into the RFC, which limits plaintiff to simple routine tasks in a low stress, low contact environment."). Therefore, the ALJ's determination, that Plaintiff's mental impairments did not cause work related limitations, was supported by the opinions of Drs. Tzetzo and Lin, as well as objective observations in the record.

Lastly, Plaintiff has a duty to prove a more restrictive RFC and fails to do so. *Smith v. Berryhill*, 740 F. App'x 721, 725 (2d Cir. 2018). The ALJ appropriately considered Ms. Marabella's statement in concluding that, although the record documented struggles with situational stressors during the time period at issue, it failed to support Plaintiff's claims regarding the alleged severity of her mental symptoms, and instead showed that her mental impairments were non-severe, as opined by Dr. Tzetzo. (T. 18-29); *see Smith,* 740 F. App'x at 726 ("We defer to the Commissioner's resolution of conflicting evidence, and accept the weight assigned to the inconsistent opinions as a proper exercise of the ALJ's discretion.") (quotations, alterations, citations omitted)).

Overall, the ALJ properly evaluated all of the medical evidence in the record in making her determination. Although Dr. Tzetzo provided an opinion prior to the receipt of all of Plaintiff's mental health treatment record, the ALJ considered the after received notations in his analysis of Plaintiff's RFC and despite an exacerbation of Plaintiff's symptoms due to her son's deployment, Plaintiff failed to prove a more restrictive RFC. The ALJ's determination that Plaintiff did not have any mental limitations that precluded the basic demands of work was supported by the medical opinion evidence in the record and objective observations in treatment notations.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is

**DENIED**; and it is further

    **ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

    **ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

    **ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:      August 31, 2020

*(signature)*
William B. Mitchell Carter
U.S. Magistrate Judge